IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

| | |
|---|---|
| Gary Ketteler, | Civil Action No. 2:11-2864-RMG-BHH |
| Plaintiff, | |
| vs. | **REPORT AND RECOMMENDATION OF MAGISTRATE JUDGE** |
| Serco, Inc., | |
| Defendant. | |

This matter is before the Court on the defendant's motion for summary judgment pursuant to Federal Rule of Civil Procedure 56 [Doc. 29]. The plaintiff has pled claims for race discrimination pursuant to Title VII of the Civil Rights Act of 1964 (as amended) ("Title VII"); age discrimination under the Age Discrimination in Employment Act ("ADEA"); and disability discrimination, under the Americans with Disabilities Act, 42 U.S.C. § 12010, *et seq.* ("ADA").

Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(A), and Local Rule 73.02(B)(2)(g), D.S.C., all pretrial matters in employment discrimination cases are referred to a United States Magistrate Judge for consideration.

## BACKGROUND

The defendant is a government contractor that provides professional, technology, and management services to various agencies of the federal government, including the Department of Defense. (Hammond Dep. at 14-15; Hammond Decl. ¶ 3.) Among other

facilities, the defendant operates a facility in Charleston, South Carolina where the defendant's employees provide the United States military with numerous services related to the mission of the United States Navy's Space and Naval Warfare Systems Command (SPAWAR). (Pl. Dep. at 54-57; Hammond Dep. at 19-20.)

The defendant hired the plaintiff as Finance Manager at its Charleston facility on January 16, 2007. (Pl. Dep. at 49.) The plaintiff, a white male, and who was born in 1948, was 59 when he was hired. (Pl. Dep. at 11.) As Finance Manager, the plaintiff was responsible for financial analysis of the defendant's operations at the Charleston facility, including tracking costs, projecting costs, and working with the defendant's project managers to ensure that work performed by the defendant stayed within budget and was properly reported and billed to its customer. (Pl. Dep. at 27.)

In 2008, the defendant realigned its business units. (Pl. Dep. at 71, 103.) As a result of this realignment, the Charleston facility was moved to the defenant's Engineering Business Unit (also referred to as Business Unit 15), and the plaintiff began reporting to the Financial Director of Business Unit 15, Alice Hammond. (Pl. Dep. at 71-72, 101-102; Hammond Dep. at 23.)

As will be discussed in more detail, *infra*, the defendant had to significantly downsize its operations in Charleston due to the winding down of this country's war in Iraq. (Pl. Dep. at 136-38; Hammond Dep. at 36.)  To save costs, the defendant instituted a significant reduction-in-force at its Charleston facility. (Pl. Dep. at 58-59, 137-38; Hammond Dep. at 20.)  For reasons that will be additionally explained below,

the plaintiff's position was eliminated, on or about March 1, 2010. (Pl. Dep. at 157-59.) In short, the defendant considered his position redundant; in all other facilities, Hammond performed the plaintiff's role. (Hammond 31, 38-40; Hammond Decl. ¶ 12.)

Unfortunately, in this same time, the plaintiff was diagnosed with prostate cancer. (Pl. Dep. at 143.) The plaintiff informed Hammond and his co-workers, in October 2010. (Pl. Dep. at 143-47.) Although the defendant claims that at this time it had already decided to eliminate the plaintiff's position, it nevertheless granted the plaintiff short-term disability benefits starting December 17, 2009. (Pl. Dep. at 146-48; 152-54.) Even still, his employment was terminated within months of his return. (Pl. Dep. at 157-59.)

The plaintiff contends that for his age and gender and disability his employ was terminated. The defendant claims financial and business necessity.

## **STANDARD OF REVIEW**

The court shall grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a). Accordingly, to prevail on a motion for summary judgment, the movant must demonstrate that: (1) there is no genuine issue as to any material fact; and (2) that he is entitled to judgment as a matter of law. As to the first of these determinations, a fact is deemed "material" if proof of its existence or non-existence would affect disposition of the case under applicable law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). An issue of material fact is "genuine" if the evidence offered is such that a reasonable jury might return a verdict for the non-

movant. *Id.* at 257.  In determining whether a genuine issue has been raised, the court must construe all inferences and ambiguities against the movant and in favor of the non-moving party.  *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962).

The party seeking summary judgment shoulders the initial burden of demonstrating to the district court that there is no genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  Once the movant has made this threshold demonstration, the non-moving party, to survive the motion for summary judgment, may not rest on the allegations averred in his pleadings.  Rather, the non-moving party must demonstrate that specific, material facts exist which give rise to a genuine issue.  *Id.* at 324.  Under this standard, the existence of a mere scintilla of evidence in support of the plaintiff's position is insufficient to withstand the summary judgment motion.  *Anderson*, 477 U.S. at 252.  Likewise, conclusory allegations or denials, without more, are insufficient to preclude the granting of the summary judgment motion.  *Ross v. Communications Satellite Corp.*, 759 F.2d 355, 365 (4th Cir. 1985). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment.  Factual disputes that are irrelevant or unnecessary will not be counted." *Anderson*, 477 U.S. at 248.

## **DISCUSSION**

The defendant has moved for summary judgment regarding the plaintiff's claims for discriminatory discharge, allegedly done on account of his age, gender, and disability.  For each, the defendant contends that the plaintiff can neither make out any

*prima facie* case of discrimination nor rebut its legitimate, non-discriminatory reason for termination.

The Court would not normally discuss such claims collectively but they all suffer essentially identical deficiency, even where there may be some incidental differences in the analysis of each claim, as argued.

For simplicity it can generally be said that a Title VII or ADEA or ADA plaintiff may "avert summary judgment . . . through two avenues of proof." *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310, 318 (4th Cir. 2005) (quoting *Hill v. Lockheed Martin Logistics Management, Inc.*, 354 F.3d 277, 284 (4th Cir. 2004) (emphasis added); *see E.E.O.C. v. Warfield-Rohr Casket Co., Inc.*, 364 F.3d 160, 163 (4th Cir. 2004) (ADEA). A plaintiff can survive a motion for summary judgment by presenting direct or circumstantial evidence that raises a genuine issue of material fact as to whether an impermissible factor such as gender or age motivated the employer's adverse employment decision. *Diamond*, 416 F.3d at 318. Pursuant to the 1991 Act, the impermissible factor need not have been the sole factor. As long as it motivated the adverse action, the plaintiff can establish an unlawful employment practice. *See* 42 U.S.C.A. § 2000e-2(m).

Alternatively, a plaintiff may "proceed under [the McDonnell Douglas] 'pretext' framework, under which the employee, after establishing a prima facie case of discrimination, demonstrates that the employer's proffered permissible reason for taking an adverse employment action is actually a pretext for discrimination." *Hill*, 354 F.3d at

285; *see also Goldberg v. B. Green & Co.*, 836 F.2d 845 (4th Cir.1988) (ADEA); *Laber v. Harvey*, 438 F.3d 404, 432 (4th Cir. 2006) (ADA); *Ennis v. Nat'l Ass'n of Bus. & Educ. Radio*, 53 F.3d 55, 57–58 (4th Cir.1995) (ADA).

The ADEA, specifically, makes it unlawful for an employer "to fail or refuse to hire or to discharge any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age." 29 U.S.C. § 623(a)(1). In an age discrimination case, a plaintiff must prove that "but for" his employer's discriminatory intent, he would not have been fired or laid off. *See Gross v. FBL Financial Services, Inc.,* 129 S. Ct. 2343, 2350 (2009); *Lovelace v. Sherwin-Williams Co.*, 681 F.2d 230, 238 (4th Cir.1982); *see also Mitchell v. Data Gen. Corp.*, 12 F.3d 1310, 1314 (4th Cir. 1993).

The plaintiff has not proffered any direct evidence but has instead expressly employed the *McDonnell Douglas* paradigm, although, as will be seen, not completely. To the extent marshaled, *McDonnell Douglas* requires that an employee first prove a *prima facie* case of discrimination by a preponderance of the evidence. If he succeeds, the employer has an opportunity to present a legitimate, nondiscriminatory reason for its employment action. If the employer does so, the presumption of unlawful discrimination created by the *prima facie* case drops out of the picture, and the burden shifts back to the employee to show that the given reason was just a pretext for discrimination. *See McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-03 (1973).

### *Prima Facie* Case

To establish a *prima facie* case of discriminatory discharge, the plaintiff must show: (1) that he is a member of a protected class; (2) that he suffered from an adverse employment action; (3) that at the time the employer took the adverse employment action he was performing at a level that met his employer's legitimate expectations; and (4) other employees who are not members of the protected class were retained under apparently similar circumstances. *See Bryant v. Bell Atlantic Maryland, Inc.*, 288 F.3d 124, 133 (4th Cir.2002).  More recently, the Fourth Circuit has affirmed a more precise formulation of the fourth element: that the "position remained open or was filled by a similarly qualified individual outside the protected class."  *See Baqir v. Principi*, 434 F.3d 733, 742 (4th Cir. 2006)). The defendant contends that the plaintiff cannot meet its demands – the fourth element.

Specifically, the defendant argues that the plaintiff cannot satisfy the fourth element because he was not replaced and that, instead, his duties were subsumed by his supervisor and Financial Director of Business Unit 15, Alice Hammond. (Pl. Dep. at 40; Sawtelle Dep. at 39; Hammond Dep. at 31, 38; Hammond Decl. ¶¶ 12, 18.)   The plaintiff responds that, in satisfaction of the *prima facie* case, 50% of his duties were, in fact, reassigned to Jean Sawtelle, a younger, non-disabled female.  (Pl. Aff. ¶ 24.)   The defendant ripostes objecting to the plaintiff's offered quantification of the amount of responsibility inherited by Sawtelle from him, since he specifically demurred to any such speculation at his deposition.  (Pl. Dep. at 181 (stating "no way to quantify it . . . perhaps

7

ten, 15 percent would be accurate").)

The Court is, of course, always concerned by a self-correcting affidavit subsequent to any sworn deposition testimony.  *See Cleveland v. Policy Mgmt. Sys.*, 526 U.S. 795, 806-07 (1999) (collecting cases holding that party cannot survive summary judgment merely by contradicting previous sworn testimony with contradictory affidavit without attempting to explain contradiction); *Halperin v. Abacus Technology Corp.*, 128 F.3d 191 (4th Cir.1997) (holding that non-moving party opposing summary judgment motion cannot offer affidavit which is inconsistent with prior sworn testimony given in deposition) *abrogated on other grounds by Baird ex rel. Baird v. Rose*, 192 F.3d 462 (4th Cir.1999)).  That being said, there is some controversy as to the amount of duty Sawtelle might have assumed.  The defendant itself admits to roughly a 10% transfer.  (Sawtelle Dep. at 39.)  But, the plaintiff has countered that even prior to his lay-off Sawtelle had been prescribed nearly 50% of his duties.  (Pl. Aff. ¶¶ 23, 24.)  This, of course, is his own view.

Though close, for the confession that some duty was transferred to Sawtelle and in light of the plaintiff's sworn representations, albeit self-enthusiastic, it is probably safest to find that an issue of fact is present.  The determination, however, is ultimately unnecessary.  The plaintiff has not made any effort to show pretext.

### B.     Legitimate, Non-Discriminatory Reason

The defendant has the burden to produce a legitimate, non-discriminatory reason for taking the adverse actions it did.  *See  Lamb v. Qualex, Inc.*, 33 Fed. Appx. 49, 60

(4th Cir. 2002). The defendant claims financial necessity, which is an effective proffer. *See Robinson v. Fasco Controls Corp.*, 1997 WL 33177288, at *3 (W.D.N.C.1997). Specifically, the defendant represents that, as the war in Iraq began to wind down in 2009 and the United States military's focus shifted to the war in Afghanistan, funding available to the defendant for projects in Iraq began to decrease. (Pl. Dep. at 136-138; Hammond Dep. at 36.) Apparently, as a result, the size of the defendant's workforce in Charleston, where the plaintiff was stationed, dropped by approximately fifty percent, from 120 employees to about 60 employees. (Pl. Dep. at 58-59, 137-138; Hammond Dep. at 20.) Moreover, the defendant alleges to have faced skyrocketing overhead rates and substantial cost overruns in the midst of reduced funding allotted by the government for the services it traditionally provided. (Pl. Dep. at 123-124, 138-140; Def. Ex. 9.) The plaintiff agrees that overhead charges "were extremely high, to the point where it was throwing a lot of our jobs, many of our jobs in the red." (Pl. Dep. 123-124.) Because of these skyrocketing overhead costs the defendant feared that it would become uncompetitive. (Hammond 34:2-7; Hammond Decl. ¶ 9; Brown Decl. ¶ 6.) Of all the locations managed by Hammond, Charleston was the only location in which a finance manager existed, the position the plaintiff held. (Pl. Dep. at 136; Hammond Dep. at 31.) In all other locations managed by Hammond, she performed the role that the plaintiff performed in Charleston. (Hammond 31, 38-40; Hammond Decl. ¶ 12.) Accordingly, in September 2010, the defendant contends that it concluded that it had no choice but to eliminate the plaintiff's position. (Hammond Dep. at 35; Hammond Decl. ¶

9

13; Brown Decl. ¶ 9.)

### c. Pretext

Because the defendant has proffered a legitimate, non-discriminatory reason for its actions, the plaintiff bears the burden of demonstrating that the real reasons were, in fact, unlawful. *See Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 142-43 (2000). The plaintiff has essentially ignored this element of the *McDonnell Douglas* framework. With respect to any of his claims, this is his entire argument:

> In this case the Plaintiff's position was eliminated because he was regarded as[1] having an impairment that substantially limits one or more of the major life Activities. The analysis should focus on reaction and perception of others and the relevant decision makers. The Plaintiff was diagnosed and informed his Defendant in the end of October. On November 10 the Plaintiff loses 50% of his duties to a less qualified younger female. The Circumstantial evidence presents a genuine issue of material fact for which a jury should decide this case.

(Pl. Resp. at 19-20.)

This is an argument in temporal proximity. And, while that is sufficient, typically, at the *prima face* case stage, it is not enough, on its own, to establish pretext. *See Smith v. Riceland Foods, Inc.*, 151 F.3d 813, 820 & n.5 (8th Cir. 1998) (holding that while close proximity in timing may be sufficient for a jury to find the causation element of plaintiff's prima facie case, it is insufficient to establish pretext); *Robinson v. City of Pittsburgh*, 120 F.3d 1286, 1302 (3d 1997) ("[E]ven if timing alone can prove causation

---

[1]The plaintiff has only argued a "regarded as" ADEA claim. He does not contend that he was, in truth, disabled.

where the discharge follows only two days after the complaint, the mere fact that adverse employment action occurs after a complaint will ordinarily be insufficient to satisfy the plaintiff's burden of demonstrating a causal link between the two events."); *Swanson v. General Serv. Admin.*, 110 F.3d 1180, 1188 (5th Cir. 1997); *see, e.g., Gibson v. Old Town Trolley Tours*, 160 F.3d 177, 182 (4th Cir. 1998) (finding the plaintiff failed to establish pretext concerning the supervisor's failure to complete reference forms, despite proof that the supervisor knew the plaintiff had made an EEO complaint).

In *Reeves*, 530 U.S. 133, the Supreme Court reiterated that evidence of pretext, combined with the plaintiff's *prima facie* case, does not compel judgment for the plaintiff, because "[i]t is not enough . . . to disbelieve the employer; the factfinder must believe the plaintiff's explanation of intentional discrimination."  *Id.* at 147 (citation omitted). However, the Court also stated that, under the appropriate circumstances, "a plaintiff's prima facie case, combined with sufficient evidence to find that the employer's asserted justification is false, may permit the trier of fact to conclude that the employer unlawfully discriminated." *Id.*  It is the plaintiff's burden to create an inference that the defendant's proffered reason is a pretext for intentional discrimination. *See id.* at 147-48. Pretext analysis does not convert Title VII into a vehicle for challenging unfair--but nondiscriminatory--employment decisions. *Holder v. City of Raleigh*, 867 F.2d 823, 828 (4th Cir.1989).  Conclusory allegations, without more, are insufficient to preclude the granting of the defendant's summary judgment motion. *See Ross* v. *Communications Satellite Corp.*, 759 F.2d 355, 365 (4th Cir. 1985) *abrogated on other grounds by Price*

11

*Waterhouse v. Hopkins*, 490 U.S. 228 (1989).

In other words, the plaintiff is required at this stage to suggest that the defendant's reason is untrue or false. As stated, the temporal proximity between his having informed the defendant of his cancer and his subsequent lay-off, as a legal matter, has no tendency to do this.[2] *See Riceland Foods, Inc.*, 151 F.3d at 820 & n.5.

The closest the plaintiff comes to such evidence is a representation in his factual statement that elimination of his position did not, in fact, materially affect the defendant's Profit and Loss statement. He claims that the lay-off's actual affect was less than one tenth of one percent. (Pl. Ex. 5.) The *quality* of the defendant's judgment is different from a consideration of whether or not that judgment was *sincerely* held. And, the law only measures the latter. It is not the province of the Court to decide whether the reason for an employer's adverse employment action "was wise, fair, **or even correct**, ultimately, so long as it truly was the reason for the [adverse employment action]." *See Dugan v. Albemarle County School Bd.*, 293 F.3d 716, 722 (4th Cir. 2002) (emphasis added); *see also Adams v. Wal-Mart Stores, Inc.*, 324 F.3d 935 (7th Cir. 2003). That the defendant was somehow ineffective in meeting its goal, in the eyes of the plaintiff, does not properly create the kind of legal doubt from which a jury may be permitted to find falsity in the explanation.

With regard to the defendant's proffer and the plaintiff's response, there is

---

[2]And for this same reason, the Court need not really examine when the defendant had actually made the decision to lay-off the plaintiff. It, of course, claims to have made the decision prior to being informed of the plaintiff's cancer but delayed out of consideration for that information.

12

nothing more. The plaintiff has not pointed to any remarks, stray or otherwise, that imply that age or gender or disability were, partially or wholly, motivating. (Pl. Dep. at 150, 160, 176.) The plaintiff, therefore, had only the luxury of *McDonnell Douglas'* upward cascading inferences upon which to build his case. His presentation stops short in its inability to suggest pretext or falsity in the reasons provided by the defendant for the termination of the plaintiff's employment.

Accordingly, the Court can only recommend dismissal.

## CONCLUSION AND RECOMMENDATION

Wherefore, based upon the foregoing, the Court recommends that the defendant's motion for summary judgment [Doc. 29], should be GRANTED in its entirety.

IT IS SO RECOMMENDED.

                                        s/Bruce Howe  Hendricks
                                        United States Magistrate Judge

January 24, 2013
Charleston, South Carolina.